IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                    CRIMINAL ACTION NO. 2:20-cr-00167

KEITH MORRIS

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Suppress. [ECF No. 40]. The Government has responded [ECF No. 43] and Defendant has replied [ECF No. 45]. In reviewing these filings and their attachments, I find that there is no material dispute of fact and that no hearing is required for further development of fact. *See United States v. Faris*, 388 F.3d 452, 458 (4th Cir. 2004). This Motion is ripe for decision. At bottom, there are three issues to be addressed: (1) whether Detective Seth Johnson had reasonable suspicion to initiate the traffic stop; (2) whether Detective Seth Johnson had reasonable suspicion to extend the traffic stop by conducting an external canine sniff; and (3) whether Detective Seth Johnson had probable cause to search the interior of the vehicle.

I.     Factual Background

The facts of the traffic stop and subsequent search are not in dispute. I will lay them out here as they were described in the filings by Defendant, the Government, and Detective Seth Johnson's Police Report which was attached to Defendant's Motion.

On August 7, 2020, Detective Seth Johnson was meeting Detective Daniel Johnson at the Quality Inn in Charleston, WV, to investigate drug activity by Rebecca Marshall. [ECF No. 41, at 2]. Detective Seth Johnson had previously investigated Ms. Marshall for drug activity. [ECF No. 41, at 2]. As Detective Seth Johnson arrived, he observed Defendant pulling out of the exit in his car. [ECF No. 41, at 2]. Detective Daniel Johnson informed Detective Seth Johnson that he had observed Defendant briefly meet with Ms. Marshall in the alley. [ECF No. 41, at 2]. According to Detective Seth Johnson, Defendant acted "suspicious" upon seeing that Detective Seth Johnson was driving a police vehicle. [ECF No. 40, Ex. A, at 2]. Based on the meeting with Ms. Marshall and on Defendant acting "suspicious," Detective Seth Johnson decided to follow Defendant.

Detective Seth Johnson followed Defendant and observed that he was traveling at a speed of 37 miles per hour in a 30 mile per hour zone. [ECF No. 40, Ex. A, at 2]. At a stoplight, Detective Seth Johnson observed that Defendant's vehicle had a temporary Virginia registration that should have expired on July 20, 2020. [ECF No. 40, Ex. A, at 2]. The Governor of Virginia had issued an Executive Directive on May 27, 2020, that extended the validity of the registration until August 31, 2020. [ECF No. 40, Ex. C, at 1].

Based on both Defendant's speed and the apparently-expired registration, Detective Seth Johnson initiated a traffic stop. [ECF No. 40, Ex. A, at 2]. While conducting the routine aspects of the traffic stop for speeding and expired registration, Detective Seth Johnson asked Defendant where he was coming from and going to. Defendant said that he was driving from his girlfriend's house out of town

and that he had not stopped anywhere since returning to Charleston. [ECF No. 40, Ex. A, at 3]. Knowing that this was not true, Detective Seth Johnson asked Defendant if he had stopped at the hotel. [ECF No. 40, Ex. A, at 3]. Only then did Defendant admit to that stop.

While checking on Defendant's information, Detective Seth Johnson learned that Defendant had "an extensive criminal history to include drug related charges." [ECF No. 40, Ex. A, at 3]. At this point, Detective Seth Johnson ordered Defendant to exit his vehicle. After conducting a pat down that Defendant consented to, Detective Seth Johnson asked for permission to search Defendant's vehicle. *Id.* Defendant did not give his consent. Detective Seth Johnson then conducted an external sniff of the car with the canine that had been in his vehicle. *Id.* During this sniff, the canine indicated the presence of drugs inside the vehicle.

Based on this indication, Detective Seth Johnson conducted a search inside Defendant's vehicle. Among other things, Detective Seth Johnson discovered a SCCY CPX-1 9mm handgun and a plastic bag containing suspected fentanyl. [ECF No. 40]. Defendant was then placed under arrest for being a felon in possession of a firearm and possession with intent to deliver a controlled substance. [ECF No. 41, at 4].

Defendant seeks to suppress the evidence found in his vehicle because Detective Seth Johnson did not have reasonable suspicion to initiate the traffic stop; because Detective Seth Johnson did not have reasonable suspicion to extend the traffic stop; and because Detective Seth Johnson did not have probable cause to search the interior of Defendant's vehicle without a warrant.

3

## II.   Legal Standard

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). "[T]he credibility of the witness[es] and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely,* 6 F.3d 1447, 1452–53 (10th Cir. 1993) (quoting *United States v. Walker,* 933 F.2d 812, 815 (10th Cir. 1991)). *See also Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.,* 56 F.3d 556, 567 (4th Cir. 1995) ("[I]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.") (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 623 (1993)). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

"[I]n determining whether a traffic stop is reasonable, [courts] apply the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the court asks (1) if the stop was 'legitimate at its inception,' *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017), and (2) if 'the officer's actions during the seizure were reasonably related

4

in scope to the basis for the traffic stop,' *Williams*, 808 F.3d at 245." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018).

First, to initiate a traffic stop, "officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped'" of breaking the law. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Reasonable suspicion is a "commonsense, nontechnical" standard that relies on the judgment of experienced law enforcement officers, "not legal technicians." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). These facts, considered together, "must in their totality serve to eliminate a substantial portion of innocent travelers" and "demonstrate a connection to criminal activity." *Palmer*, 820 F.3d at 650 (quoting *United States v. Williams*, 808 F.3d 238, 246 (4th Cir. 2015) (internal quotation marks omitted)).

Then, once the stop has been initiated for an ordinary traffic violation, an "officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez*, 575 U.S. 348, 355 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.*

Once an officer takes actions that are unrelated "in scope to the basis of the traffic stop," the officer must have "the reasonable suspicion ordinarily demanded to

5

justify detaining an individual." *Rodriguez*, 575 U.S. at 355. Once an officer is no longer taking actions related to the original justification for the stop, that stop has been extended. Whether a stop has been extended is not necessarily a temporal analysis. Instead, whether additional reasonable suspicion is required can be determined by asking whether the officer has expanded the scope of the traffic stop. Absent reasonable suspicion that the seized individual is in possession of a controlled substance, substantially deviating from the routine tasks of a traffic stop to conduct a canine sniff is unreasonable. But if the officer conducting the traffic stop develops reasonable suspicion during the traffic stop that the seized individual is in possession of a controlled substance, conducting an exterior canine sniff is not an unreasonable expansion of the scope of the stop. *Id.* at 355–356.

To then search the interior of the vehicle without a warrant, the officer must have probable cause to believe that the car contains contraband. *Caroll v. United States*, 267 U.S. 132, 155–156 (1925). An indication from a police canine can serve as the basis for probable cause justifying the warrantless search of a car. *United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016); *United States v. Branch*, 537 F.3d 328, 340 n.2 (4th Cir. 2008).

### III. Discussion

The questions before the court are whether Detective Seth Johnson had the requisite reasonable suspicion to initiate the traffic stop of Defendant; whether Detective Seth Johnson had a reasonable basis for expanding the search to conduct a

drug canine sniff; and whether Detective Seth Johnson had probable cause to conduct a warrantless search of Defendant's vehicle.

### a. Reasonable Suspicion to Initiate the Traffic Stop

The Government contends that Detective Seth Johnson had two independent bases to justify the traffic stop: that Defendant was traveling at a speed of 37 miles per hour in a 30 mile per hour zone and that Defendant's temporary Virginia registration was expired. [ECF No. 43, at 6–9].

#### i. Reasonable Suspicion of Speeding

Detective Seth Johnson observed Defendant traveling at a speed of 37 miles per hour in a 30 mile per hour zone. Detective Seth Johnson states in his report that he estimated this speed by keeping pace with Defendant's car. Defendant argues that this method is insufficient to support Detective Seth Johnson's estimate of speed.

"The reasonableness of an officer's visual estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate." *United States v. Sowards*, 690 F.3d 583, 592 (4th Cir. 2012). Pacing refers to the practice of a police officer using his or her own speedometer to determine the speed of the suspect's vehicle. The reasonableness of an officer's speed estimate depends in part on whether a vehicle's speed is estimated to be in significant excess or slight excess of the legal speed limit. *Id.*

I have found estimates of speed from pacing to validly support a traffic stop before, *see generally United States v. Boggess*, 444 F. Supp. 3d 730 (S.D. W. Va. 2020),

7

but pacing is more likely to be accurate when the speed differential is higher, *see, e.g., United States v. Banks*, 2008 WL 41944874, at *1, *4 (M.D. Fla. Sept. 11, 2008) (visual estimation of 50–60 miles per hour in a 30 mile per hour zone). Without further indicia of reliability, such as information on Detective Seth Johnson's training in visual estimates of speed, I cannot find that his estimate of 37 miles per hour in a 30 mile per hour zone based on pacing alone supports a finding of reasonable suspicion justifying a traffic stop. But, because Detective Seth Johnson had a second, independent basis for reasonable suspicion to justify the traffic stop, I need not investigate whether there were other, sufficient indicia of reliability of his estimate any further.

### ii. Reasonable Suspicion of an Expired Vehicle Registration

In his Motion, Defendant argues that his Virginia vehicle registration was not actually expired and that Detective Seth Johnson should have known this because the Governor of West Virginia has taken similar executive action to extend the validity of vehicle registrations due to the COVID-19 pandemic. [ECF No. 41, at 5–6]. That Defendant's vehicle registration was not actually expired is not a death knell to the validity of the stop so long as Detective Seth Johnson's mistake of law was a reasonable one. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014).

A reasonable "mistake of law can . . . give rise to the reasonable suspicion necessary to uphold [a] seizure under the Fourth Amendment." *Id.* at 57. The mistake of law must be objectively reasonable. *United States v. Hinton*, 773 F. App'x 732, 734 (4th Cir. 2019). While there is no "advantage through a sloppy study of the laws he is

8

duty-bound to enforce", *Heien*, 574 U.S. at 55, "to be reasonable is not be perfect." *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020).

I am persuaded by the government's argument that it is objectively reasonable that Detective Seth Johnson was not aware of an executive order issued in another state extending the validity of an apparently-expired registration. While behind Defendant at a traffic light, Detective Seth Johnson observed that Defendant's Virginia registration had expired and was aware that it is illegal under West Virginia law to drive with an expired registration. W. Va. Code § 17A-9-2.

Were this a question of a West Virginia vehicle registration, a West Virginia executive order, a defendant driving in West Virginia, and a police officer enforcing West Virginia law, there would be a greater expectation that Detective Seth Johnson should be aware of such an order. But in the case of a Virginia vehicle registration, a Virginia executive order, a defendant driving in West Virginia, and a police officer enforcing West Virginia law, I find that Detective Seth Johnson's suspicion that Defendant was violating the traffic laws of West Virginia to be objectively reasonable.

I find that Detective Seth Johnson's justification for initiating the traffic stop was legitimate. Having found this, I next turn to whether Detective Seth Johnson had the reasonable suspicion necessary to expand the scope of the traffic stop to conduct the canine sniff.

### b. Reasonable Suspicion to Extend the Stop

The Government contends that Detective Seth Johnson's reasonable suspicion was based on four different grounds: (1) that Defendant was observed meeting with Ms. Marshall who was under investigation for drug activity; (2) that Defendant acted

9

suspicious when Detective Johnson saw him exiting the hotel parking lot; (3) that Defendant claimed that he had not stopped anywhere before later admitting to stopping at the hotel; and (4) Defendant's criminal history and prior drug activity.

Many courts have found that most people are nervous when interacting with law enforcement regardless of whether the person has done anything illegal. *See, e.g.*, *United States v. Massenburg*, 654 F.3d 480, 490 (4th Cir. 2011). Because of this, I will not consider Detective Seth Johnson's observations about Defendant leaning back in his seat and avoiding eye contact when determining whether Detective Seth Johnson had the reasonable suspicion necessary to expand the scope of the traffic stop by conducting a canine sniff.

Each of the three remaining grounds for reasonable suspicion may not, individually, have been adequate to support Detective Seth Johnson having reasonable suspicion that Defendant was participating in illegal activity other than the traffic violations for which he was pulled over. But, when considered in the aggregate, I find that these three facts adequately support Detective Seth Johnson's decision to expand the scope of the stop and conduct the canine sniff. Detective Seth Johnson arrived at the hotel to continue an already ongoing drug investigation of Ms. Marshall where Defendant was observed speaking with her in an alley before exiting the parking lot. Then, once he had been pulled over, Defendant lied to Detective Seth Johnson and claimed that he had not stopped anywhere since returning to Charleston when he had, in fact, stopped at the hotel to speak with Ms. Marshall. These actions,

combined with Defendant's prior history with drug activity, are enough to support a finding that reasonable suspicion existed.

### c. Probable Cause to Search the Interior of the Vehicle

Having found that Detective Johnson had reasonable suspicion to expand the scope of the stop and conduct the canine sniff, the next question is whether Detective Seth Johnson had probable cause to conduct a warrantless search of Defendant's car. The canine employed by Detective Seth Johnson indicated the presence of drugs in the car more than once. I find that because the canine indicated the presence of drugs in the vehicle, Detective Seth Johnson had probable cause to conduct the warrantless search. *United States v. Branch*, 537 F.3d 328, 340 n.2 (4th Cir. 2008) ("it is well settled that a 'positive alert' from a drug detection dog, in and of itself, provides probable cause to search a vehicle").

### IV. Conclusion

Because Detective Seth Johnson had reasonable suspicion to initiate the traffic stop, reasonable suspicion to expand the scope of the traffic stop by conducting the canine sniff, and probable cause to search the interior of the car, Defendant's Motion to Suppress [ECF No. 40] is **DENIED**. The Pretrial Motions Hearing scheduled for January 21, 2021, is now **CANCELLED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: January 14, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE